UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | | |
|---|---|---|
| CHAD FURGASON, Plaintiff, | ) | |
| v. | ) | No. 1:25-cv-00752-JPH-MKK |
| S & H CAMPGROUND INC., Defendant. | ) | |

**ORDER OVERRULING OBJECTION AND ADOPTING REPORT & RECOMMENDATION**

After the parties settled their claims at a settlement conference with Magistrate Judge Klump, Plaintiff Chad Furgason fired his counsel and objected to the settlement. Defendant S & H Campground filed a motion to enforce the settlement agreement, which Magistrate Judge Klump recommended be granted. Mr. Furgason objected to Magistrate Judge Klump's Report and Recommendation. Dkt. [47]. For the reasons below, Mr. Furgason's objection is **OVERRULED** and the Court **ADOPTS** Magistrate Judge Klump's Report and Recommendation. Dkt. [46]. Defendant's motion to enforce the settlement agreement is **GRANTED**. Dkt. [32].

## I.
## Facts and Background

Plaintiff Chad Furgason worked for S & H at its campground in Hancock County, Indiana from 2017 until August of 2024. Dkt. 1 at 1, 3. In 2023, Mr. Furgason brought this case alleging that S & H failed to pay him overtime under the Fair Labor Standards Act ("FLSA") and Indiana's wage law. Dkt. 1 at

1. Mr. Furgason also alleged that S & H retaliated against him for filing a wage complaint with the United States Department of Labor ("DOL"). *Id.* at 3. S & H filed a counterclaim alleging breach of contract and unjust enrichment, and seeking an eviction. Dkt. 16 at 5, 14. Mr. Furgason bases his retaliation claims in part on these counterclaims. *E.g.*, dkt. 28 at 2; dkt. 38 at 6–7; dkt. 39 at 8–13.

In September 2025, Magistrate Judge Klump held a settlement conference where the parties agreed to settle their claims and signed a term sheet agreement. Dkt. 25; dkt. 45–1.

Six days later, Mr. Furgason told his counsel that he had "[m]any concerns . . . since signing the agreement" and wanted to object to the settlement agreement. Dkt. 39 at 9. Mr. Furgason's counsel advised him to sign the final agreement because it would include a revocation provision. *Id.* at 15. Mr. Furgason reiterated that he would not sign the final settlement agreement and fired his counsel. Dkt. 26; dkt. 28. S & H then filed a Motion to Enforce Settlement Agreement, dkt. 32; dkt 33, which Mr. Furgason opposed, dkt. 38 at 2, 5.

Magistrate Judge Klump issued a Report and Recommendation, finding that the parties reached an enforceable settlement because the signed term sheet is a contract. Dkt. 46 at 15–16. Magistrate Judge Klump recommended the settlement be enforced as fair and reasonable under the FLSA. Dkt. 46 at 20, 25–26. Mr. Furgason objected to Magistrate Judge Klump's Report and Recommendation. Dkt. 47.

## II. Applicable Law

"The Federal Magistrate Act grants a district court judge the authority to refer a magistrate judge to conduct hearings and submit proposed findings of facts and recommendations." *Jackson v. United States*, 859 F.3d 495, 498 (7th Cir. 2017) (citing 28 U.S.C. § 636(b)(1)(B)). If a party objects to the recommendation, the "district judge must determine *de novo* any part of the magistrate judge's disposition that has been properly objected to." Fed. R. Civ. P. 72(b); 28 U.S.C. § 636(b)(1).

## III. Analysis

Mr. Furgason argues that the settlement is unenforceable because no contract was formed during the settlement conference, he was coerced into signing the term sheet, S & H's counterclaims were retaliatory, and his former counsel's alleged misconduct voids any agreement. Dkt. 38 at 5. Indiana contract law applies to the "issues concerning the formation, construction, and enforcement of settlement agreements." *Beverly v. Abbott Labs.*, 817 F.3d 328, 333 (7th Cir. 2016); *see* dkt. 46 at 11.

### A. The Signed Term Sheet is an Enforceable Contract

While Mr. Furgason's initial brief argued that "[n]o enforceable contract was ever formed," dkt. 38 at 2, he does not make that argument in his objection to the Report and Recommendation, dkt. 47. Instead, he states that his "objections [to the Report and Recommendation] are narrowly directed towards the Report's treatment of retaliation, coercion, voluntariness, and

fairness." Dkt. 47 at 8. He accordingly focuses on his argument that he effectively revoked his consent to the settlement term sheet. *Id.* Mr. Fergason has therefore waived any argument that no contract was formed. Fed. R. Civ. P. 72(b)(3). Regardless, the record shows that an enforceable contract was formed when the parties signed the term sheet at the conclusion of the settlement conference. *See* dkt. 45-1 (term sheet); *Jetz Serv. Co. v. Ventures*, 165 N.E.3d 990, 994–95 (Ind. Ct. App. 2021) ("All that is required to render a contract enforceable is reasonable certainty in the terms and conditions of the promises made, including by whom and to whom; absolute certainty in all terms is not required.").

"An agreement to settle a claim in federal court is enforced just as any other contract." *Dillard v. Starcon Int'l Inc.*, 483 F.3d 502, 506 (7th Cir. 2007). Generally, a party may not revoke a contract without the other party's consent. *Eichenberger v. Eichenberger*, 743 N.E.2d 370 (Ind. Ct. App. 2001). A litigant cannot simply change their mind and revoke their consent prior to signing the formal settlement agreement. *Jonas v. State Farm Life Ins. Co.*, 52 N.E.3d 861, 868 (Ind. Ct. App. 2016) (citing *Pohl v. United Airlines, Inc.,* 213 F.3d 336, 337 (7th Cir. 2000) (affirming district court's enforcement of settlement agreement)).

Here, S & H did not consent to Mr. Furgason's attempted revocation of their settlement contract, *see generally* dkts. 32 and 33, and Indiana law does not allow Mr. Furgason to unilaterally revoke his consent. The settlement agreement is thus enforceable and Mr. Furgason's attempt to revoke his consent is ineffective. *See Jonas*, 52 N.E.3d at 868 ("[I]f a party agrees to settle

a pending action, but then refuses to consummate his settlement agreement, the opposing party may obtain a judgment enforcing the agreement.").

Mr. Furgason next argues that the settlement is void because his counsel "ignored instructions and suppressed objections." Dkt. 38 at 7 (listing actions of counsel). S & H contends that any attorney misconduct has no effect on the settlement agreement. Dkt. 40 at 6. "[T]he adequacy or propriety of counsel's advice is irrelevant to the question of whether a settlement was knowing and voluntary." *Baptist v. City of Kankakee*, 481 F.3d 485 (7th Cir. 2007). Instead, a party's agreement to a settlement is presumed to be knowing and voluntary when they are represented by their chosen counsel. *Id.* So, Mr. Furgason's complaints against his former counsel do not void the settlement agreement.

**B. Mr. Furgason was not Coerced into Signing the Term Sheet.**

Mr. Furgason argues that the settlement agreement is void because he was coerced and signed the term sheet under duress. Dkt. 47 at 2–3. S & H responds that there is no evidence in the record showing that Mr. Fergason was coerced into accepting the settlement agreement or that he accepted the agreement under duress. Dkt. 40 at 3–4.

Under Indiana law, duress is "an actual or threatened violence or restraint of a man's person, contrary to law, to compel him to enter into a contract." *Raymundo v. Hammond Clinic Ass'n*, 449 N.E.2d 276, 282-83 (Ind. 1983). The central question is whether a party was "deprived of the free exercise of his own will." *Id.* at 283. "Mere threats, which fall short of subverting the will, cannot constitute duress." *Id.*

Mr. Furgason argues that while S & H's counterclaims alone do not constitute coercion, they were coercive when combined with other adverse circumstances, including housing-related pressure, the pending eviction, economic pressure, the previous DOL proceedings, previously alleged retaliatory conduct, S & H's conduct in the settlement, and S & H's alleged bad faith. Dkt. 47 at 2-3. S & H responds that Mr. Furgason has not supplied evidence supporting this argument. Dkt. 40 at 3–4.

None of the factors that Mr. Furgason identifies as coercive removed his choice whether to settle the case rather than continue litigation. *See Raymundo*, 449 N.E.2d at 282-83. While Mr. Furgason may have felt pressured to settle his case because the counterclaims put him at risk of losing his home and exposed him to significant financial liability, dkt. 38 at 3; *see generally* dkt. 39, he has not shown that those circumstances "deprived [Mr. Furgason] of the free exercise of his own will." *Raymundo*, 449 N.E.2d at 283. Mr. Furgason supplies no authority supporting the proposition that the circumstances he describes constitute duress under Indiana law. *Id.* at 282.

Next, there's no indication that the counterclaims were brought in bad faith. *See* Fed. R. Civ. P. 13(a). In a settlement conference, the parties must weigh their likelihood of success on the merits against the risks and uncertainty of continued litigation. Here, Mr. Furgason could have chosen not to sign the term sheet and instead proceeded with litigation, so there was no duress. Indeed, to try to show coercion, Mr. Furgason references "settlement conduct" without any further explanation. Dkt. 47 at 3. While Mr. Furgason

may have been frustrated with S & H's negotiation tactics, *see* dkt. 39 at 10, 12, he was free to reject—and did reject—S & H's initial counteroffers that he viewed as unfavorable, so they also do not show duress or coercion.

Mr. Furgason then argues that S & H's actions after the DOL proceedings were coercive. Dkt. 47 at 3. Regardless of whether these actions were retaliatory or coercive, they occurred long before the settlement conference and were part of Mr. Furgason's original complaint. Dkt. 1 at 3. These actions were therefore too far removed from the settlement conference to have induced Mr. Furgason against his will to sign the term sheet and settle his claims.

Finally, Mr. Furgason argues that his former attorneys attempted to coerce him into waiving his FLSA rights by advising him after the settlement that he could cash the DOL settlement check for unpaid wages. Dkt. 38 at 8. But alleged coercion into waiving FLSA rights *after* the settlement was reached could not affect the validity of the settlement itself, which would not be undermined by cashing the DOL check. *See* dkt. 45-1 (sealed term sheet indicating that Mr. Furgason "shall proceed with efforts" to collect the DOL settlement funds). Counsel's advice that Mr. Furgason could cash the DOL check was not coercive.

Ultimately, Mr. Furgason was not subjected to coercion or duress sufficient to void the signed term sheet because nothing deprived him of his free will and the ability to proceed with litigation.

**C. S & H's Counterclaims are not Retaliation under the FLSA.**

Mr. Furgason argues that S & H's counterclaims were retaliatory under the FLSA. Dkt. 3–4. S & H contends that its counterclaims were meritorious and were not coercive. Dkt. 40 at 6.

Generally, conduct within the scope of litigation cannot be retaliation. *Steffes v. Stepan Co.*, 144 F.3d 1070, 1075 (7th Cir. 1998); *Ergo v. Int'l Merch. Servs., Inc.*, 519 F.Supp.2d 765, 780 (N.D. Ill. 2007) ("The filing of a compulsory counterclaim is a particularly unlikely basis for a retaliation."). Here, S & H filed counterclaims for unpaid rent and unpaid use of the campsite. Dkt. 16 at 15–19. The parties genuinely disputed whether rent and use of the campsite were included in Mr. Furgason's compensation package, and it's undisputed that Mr. Furgason continued to live in the apartment and use the campsite after his employment ended in August of 2024. Dkt. 1 at 3; dkt. 16 at 15–16; dkt. 21 at 3–6. S & H's counterclaims therefore were not frivolous and do not amount to retaliation under the FLSA. *See Beltran v. Brentwood N. Healthcare Ctr., LLC*, 426 F.Supp.2d 827, 833 (N.D. Ill. 2006).

**D. The Settlement Agreement was Fair and Reasonable under the FLSA.**

Mr. Furgason argues that the settlement was not fair and reasonable because the valuation "substantially discount[s]" his claims while "giving substantial credit" to S & H's counterclaims. Dkt. 47 at 4. S & H argues that Mr. Furgason's argument does not reflect the contents of the Report and Recommendation. Dkt. 48 at 3–4.

FLSA settlements must be fair and reasonable. *See Dye v. Wargo*, 253 F.3d 296, 302 (7th Cir. 2001); *Lynn's Food Stores, Inc. v. United States*, 679 F.2d 1350, 1353 n.8 (11th Cir. 1982). A settlement is generally fair and reasonable when it is the result of contested litigation. *See Lynn's Food Stores*, 679 F.2d at 1354; *Donaldson v. MBR Cent. Illinois Pizza, LLC*, No. 18-CV-3048, 2019 WL 4447969 (C.D. Ill. Sept. 17, 2019).

Here, the settlement resulted from contested FLSA litigation and any reduction from a full recovery reflects the value of immediate recovery and the risk of continued litigation. Dkt. 46 at 20–22; *see Burkholder v. City of Ft. Wayne*, 750 F.Supp.2d 990 (N.D. Ind. 2010) (quoting *Misiewicz v. D'Onofrio Gen. Contractors*, No. 08 CV 4377(KAM)(CLP), 2010 WL 2545439, at *3 (E.D.N.Y. May 17, 2010)). The parties dispute the hours Mr. Furgason worked, the wages he is owed, and whether his apartment and use of the campsite was part of his total compensation. *See* Dkt. 1 at 3; Dkt. 16 at 16; dkt. 21 at 3–6. The settlement reflects those uncertainties, with their risk of reduced or no recovery, and the continued cost of litigation. The settlement was therefore fair and reasonable.

## IV.
## Conclusion

Mr. Furgason's objection to Magistrate Judge Klump's Report and Recommendation is **OVERRULED**, dkt. [47], and the Court **ADOPTS** the Report and Recommendation, dkt. [46]. S & H's Motion to Enforce is **GRANTED**, dkt. [32].

The Court **ORDERS** S & H to provide copies of the paperwork needed to finalize the settlement (i.e., release and W9 form) to Mr. Furgason **by October 16, 2026**. Mr. Furgason **MUST RETURN** executed copies of said forms to S & H **by November 2, 2026**. If Mr. Furguson does not do so, the Court may dismiss this case with prejudice without further warning.

The parties **shall have through November 13, 2026** to file a stipulation of dismissal under Federal Rule of Civil Procedure 41(a)(1)(A)(ii) or a motion to dismiss under Rule 41(a)(2).

**SO ORDERED.**

Date: 9/30/2026

James Patrick Hanlon

James Patrick Hanlon
United States District Judge
Southern District of Indiana

Distribution:

CHAD FURGASON
14 West Main Street
Apartment C
Greenfield, IN 46140

All electronically registered counsel